The document below is hereby signed.

Signed: April 24, 2015



S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| BUTLER INNOVATIVE SOLUTIONS, | ) | Case No. 08-00065 |
| INC., | ) | (Chapter 7) |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| WILLIAM DOUGLAS WHITE, TRUSTEE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding No. |
| v. | ) | 10-10021 |
| | ) | |
| BETZAIDA JONES, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM DECISION AND ORDER REGARDING
PLAINTIFF'S AMENDED MOTION FOR SUMMARY JUDGMENT

The plaintiff, William Douglas White, is the trustee

appointed to administer the estate of the debtor, Butler

Innovative Solutions, Inc. ("Butler Innovative").  He seeks in

this adversary proceeding to avoid pursuant to 11 U.S.C. § 549

certain transfers of funds of the estate of Butler Innovative

made to or for the benefit of the defendant, Betzaida Jones,

without court authorization after the entry of the order for
relief in this case on March 14, 2008, and to recover pursuant to
11 U.S.C. § 550(a) a judgment for the amount of those transfers.
White has filed an amended motion for summary judgment, which
Jones has opposed.[1]  I will grant that amended motion in large
part, and direct the parties to provide additional information
and briefing as to certain minor deductions from Jones's pay.

I

Except for raising a statute of limitations defense as to
one of the transfers, a defense that is premised on an erroneous
factual assumption, Jones does not dispute that the transfers at
issue are avoidable under 11 U.S.C. § 549.  In turn, 11 U.S.C.
§ 550(a) provides:

> (a) Except as otherwise provided in this section, to the
> extent that a transfer is avoided under section 544, 545,
> 547, 548, 549, 553(b), or 724(a) of this title, the
> trustee may recover, for the benefit of the estate, the
> property transferred, or, if the court so orders, the
> value of such property, from--
>      (1) the initial transferee of such transfer or
> the entity for whose benefit such transfer was
> made; or
>      (2) any immediate or mediate transferee of
> such initial transferee.

Then, 11 U.S.C. § 550(d), raised by Jones as a defense, provides:
"The trustee is entitled to only a single satisfaction under

---

[1]  Nelson C. Cohen, Esq. has represented Jones on a pro bono
basis, and I express my gratitude to Cohen for having engaged in
that representation, and having raised in favor of Jones
arguments worthy of consideration.

subsection (a) of this section." White has demonstrated his entitlement to avoidance under § 549 of the transfers at issue, and to the entry of a judgment under § 550(a), and, in short, there has not yet been a satisfaction that can be raised as a defense under the single satisfaction rule of § 550(d).

II

Jones has not raised a genuine dispute as to the material facts upon which White relies, and the additional facts adduced by Jones (which for purposes of White's motion I will assume are true) do not alter White's entitlement to summary judgment. Accordingly, for purposes of disposing of this motion, the facts are as follows.

Jones was employed full time by Butler Innovative beginning in 2005 or 2006. In 2008 (the year Butler Innovative's bankruptcy case began), Jones commenced doing relocation planning for Butler Innovative, and when the position opened during the first quarter of 2008, Jones began handling the Westwood Security relocation in Birmingham, Alabama for Butler Innovative. She continued to provide services for Butler Innovative through at least September 4, 2008, when the Birmingham, Alabama project ended. She performed her work on location in Birmingham, not in Butler Innovative's office, and had no responsibility for preparing or submitting payroll to Paychex.

Butler Innovative's bankruptcy case began with the filing of

an involuntary petition under chapter 7 of the Bankruptcy Code on January 31, 2008.  On March 14, 2008, the court entered an order for relief under 11 U.S.C. § 303(h).  Prior to the entry of that order, Butler Innovative had authority to continue to operate its business and to "continue to use, acquire, or dispose of property as if an involuntary case concerning [it] had not been commenced."  11 U.S.C. § 303(f).  The entry of the order for relief terminated that authority.

White was appointed to serve as the trustee in the case, and has continued to so serve under 11 U.S.C. §§ 701(a)(1) and 702(d).  White did not seek to continue to operate Butler Innovative's business under 11 U.S.C. § 704(a)(8).

Jones acknowledged in her deposition that throughout 2008 she was in a personal relationship with John Butler.  After entry of the order for relief on March 14, 2008, and until August 22, 2008,[2] Jones received Butler Innovative net payroll payments through Paychex based on gross wages of $11,666.72 less withholdings for income taxes, Social Security, Medicare, and other miscellaneous amounts.

---

[2]  The trustee's statement of undisputed material facts states that Jones's last payroll payment through Paychex was dated August 15, 2008, whereas a copy of a pay check attached as the first page of the trustee's Exhibit 1 is dated August 22, 2008.  The company's payroll journal reflects that the payment to Jones for the pay period ending on August 15,2008, was made by a check dated August 22, 2008 (White's Ex 1 at p. 6 of 29) (listing the "run date" as 8/21/08 and the check date as 8/22/08).

Butler Innovative also made transfers during 2008 for the benefit of Jones in the form of payments to Edward H. Meyer & Son, Jones's landlord.  The payments were in the form of checks on Butler Innovative's checking account signed by John Butler, the President and sole owner of Butler Innovative.  Thus far, White has identified $3,610 of payments to Edward H. Meyer & Son as follows: check number 1025 dated July 31, 2008 in the amount of $1,265; check number 1031 dated August 21, 2008 for $1,045; check number 1019 dated June 1, 2008 for $1,300.  (If White's motion for summary judgment is granted, he is content to limit his recovery from Jones regarding payments to Edward H. Meyer & Son to the identified payments.)  Jones notes that White has not produced the lease under which Edward H. Meyer & Son purportedly received payments, and that the transfers were not made to her. However, Jones testified at her deposition that the foregoing monthly payments to Edwin H. Meyer & Son were to her landlord for rent and were made by John Butler throughout 2008.  White is not required to produce the lease in order to demonstrate that the payments to Jones's landlord were for her benefit.

An additional check was written to Jones, check number 1050 dated July 1, 2008, for $1,045.  This check is in the amount of several of the other rent checks.  In any event, such payment was directly to Jones.

III

Jones questions the propriety of White's asserting that

$11,666.72 is the amount of payroll transfers at issue.

According to Jones, only transfers of $8,859 could be the subject

of an 11 U.S.C. § 549 action.  Her calculation differs from

White's for two reasons.

A.

First, Jones has excluded in her calculation her pay for the

pay period ending on March 16, 2008, as barred by the statute of

limitations of 11 U.S.C. § 549(d) (which, here, bars recovery of

transfers made prior to March 25, 2008, the date that is two

years before the filing of this adversary proceeding), but that

payment was made by Butler Innovative on March 26, 2008, and thus

is not barred by the statute of limitations.[3]

B.

Second, Jones has included only the **net amount** of pay she

received after payroll deductions.  For each of the eight

payrolls for which Jones received payments after the date of the

order for relief, the **gross amount** of wages Jones earned for each

payroll after the entry of the order for relief was $1,458.34,

which produces a total amount of $11,666.72 in gross wages paid

---

[3]  The payment was made on March 26, 2008, as shown on
Jones's bank account records (White's Ex. 2), and on the
company's payroll journal (White's Ex. 1 at p. 13 of 29) (listing
the "run date" as 03/24/08 and the check date as 03/26/08).

via the eight payroll transfers at issue.

The proper total of the transfers includes the amounts that Paychex deducted from Jones's gross pay for her benefit, not just the net amount deposited in her account after those payroll deductions.  White has not shown that Butler Innovative (or Paychex on Butler Innovative's behalf) transferred the withheld items to the entities to whom the funds were supposed to be transferred for the benefit of Jones.  Nevertheless, for the reasons that follow, it is apparent from the record that the amounts withheld from Jones's pay were in large part demonstrably for her benefit and conferred a benefit on her, and that the remaining amounts presumably were also withheld for her benefit and likely conferred a benefit on her.  However, because White failed to brief this issue, Jones had no occasion to argue that the withholdings did not benefit her, and I will allow her to supplement her opposition to address any flaw in my reasoning.

"Once net wages are paid to the employee, the taxes withheld are credited to the employee regardless of whether they are paid by the employer, so that the IRS has recourse only against the employer for their payment."  *Slodov v. United States*, 436 U.S. 238, 243, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978).  The amounts withheld from Jones for obligations she was required to meet incident to her receiving wages (such as Social Security and

Medicare taxes) satisfied her obligation in that regard and thus conferred a benefit on her in the same amount. Similarly, she was entitled to a credit as to her income tax liabilities for the year 2008 for the income taxes withheld from her pay, and thus those income tax withholdings conferred a benefit on her in the same amount.

Moreover, under *Begier v. Internal Revenue Service*, 496 U.S. 53, 62, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990) (interpreting 26 U.S.C. § 7501, which deals with withheld Federal taxes), the rule is that "§ 7501 creates a trust in an abstract 'amount'-a dollar figure not tied to any particular assets-rather than in the actual dollars withheld." Despite the employer's failure to place the collected and withheld taxes in a segregated account, a trust is created. *Id.* at 60. The *Begier* analysis also applies to Pennsylvania state withholding taxes withheld from Jones's salary. *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92 (3d Cir. 1994). Accordingly, with respect to the amounts withheld that should have been transmitted to the Internal Revenue Service or the state of Pennsylvania, White can show that a benefit was conferred on Jones if assets existed that could be subjected to such a *Begier* trust upon Butler Innovative paying net pay to Jones. We know that Butler Innovative had sufficient funds on hand to cover the payroll taxes withheld from Jones for the first

8

seven post-order-for-relief payroll payments because, for each of those, there followed a later payroll for which funds were paid out that exceeded the amounts withheld from Jones. And for the eighth (and final) payroll, Butler Innovative's schedules reveal assets to which a trust would apply. Accordingly, there was a transfer to a trust for the benefit of Jones with respect to withheld taxes, whether Federal or state. That results in a benefit having been conferred upon Jones with respect to all of the amounts representing withheld taxes.

Similarly, *Begier* applies to the constructive trust that arose with respect to any other payroll deductions that were for the benefit of Jones. *In re Edison Bros., Inc.*, 243 B.R. 231 (Bankr. D. Del. 2000).[4] However, the parties have not addressed this issue. Butler Innovative's records reflect withholdings from Jones's pay for (1) "S125MEECMP" which probably refers to deductions under section 125 of the Internal Revenue Code (26 U.S.C.) for a flexible spending account to cover employee medical plan expenses; and (2) "PRETXEEDEN" which probably refers to pre-tax deductions for an employee dental plan. If, indeed, those were the purposes of the deductions, they would have been

---

[4] It is easy to speculate that Paychex, as a payroll processor, would have transmitted any withheld amounts to the intended recipient, but White cannot carry his burden of proof via speculation, thus necessitating resort to addressing the effect of the constructive trust that would have arisen with respect to payroll deductions intended for Jones's benefit.

deductions for Jones's benefit.  However, White's motion did not address these withholdings.

The deductions for taxes, as discussed above, conferred a benefit on Jones.  As a practical matter, these two other types of deductions from Jones's pay likely similarly conferred a benefit on her: as shown by the paystubs, Jones earned gross pay. Presumably she would have been subjected to deductions only as necessary to meet obligations imposed on her or to set aside funds for some purpose beneficial to her.  Nothing comes to mind that would alter that presumption.

But Jones should know the character of these deductions, and it is likely the parties could reach a stipulation that (under the foregoing preliminary analysis) these deductions conferred a benefit on Jones, unless Jones wishes to advance some argument showing that these deductions were *not* for her benefit (or did not confer a benefit on her even if intended for her benefit). White can file a stipulation as to the purpose of the deductions or file supplemental evidence to show the purposes of these deductions and, if he deems it warranted, evidence regarding whether Paychex transmitted these funds to the intended recipient.

IV

White is not required to produce the lease in order to demonstrate that the payments to Jones's landlord were for her benefit.  These checks were in the total amount of $3,610.  Jones received an additional check directly for $1,045.  Each of these transfers, as an avoided transfer, may in turn be recovered under 11 U.S.C. § 550(a)(1) as a transfer to "the initial transferee . . . or the entity for whose benefit the transfer was made" unless Jones can show the applicability of an exception to that provision.

V

Section 549 allows a trustee to avoid certain postpetition transfers regardless of whether the transfers depleted the estate.  *See Aalfs v. Wirum ( In re Straightline Invs., Inc.)*, 525 F.3d 870, 878-79 (9th Cir. 2008).  In turn, § 550(a) provides, with exceptions of no applicability here, that the trustee can recover the transferred property or its value from the initial transferee or the entity for whom the transfer was made.  However, by reason of § 550(d), the trustee is entitled to but one satisfaction of the amount he is entitled to recover under § 550(a).

Jones defends by arguing that even if the transfers are avoidable, she is entitled to an equitable credit against such

11

transfers as her work conferred a benefit on the estate, citing

*Dobin v. Presidential Fin. Corp. of Delaware Valley (In re*

*Cybridge Corp.)*, 312 B.R. 262 (D.N.J. 2004), and invoking that

decision's reliance on 11 U.S.C. § 550(d) and  § 105(a).[5]

A.

In *In re Cybridge Corp.*, Presidential was a lender to

Cybridge Corporation under a factoring agreement.   Thereafter,

and unbeknownst to Presidential, Cybridge commenced a voluntary

case under chapter 11 of the Bankruptcy Code.   Presidential

continued to advance funds to Cybridge pursuant to the factoring

agreement.   Once the case was converted to chapter 7, the chapter

7 trustee successfully avoided the transfers to Presidential and

sought a judgment for the amount of those transfers.   The

bankruptcy court accorded Presidential a credit for all funds

that Presidential advanced to Cybridge postpetition, reasoning

that Presidential's advances were the equivalent of returning to

Cybridge, as a debtor in possession exercising the powers of a

trustee, the funds that Cybridge paid to Presidential

postpetition.   *In re Cybridge*, 312 B.R. at 266-67.   On appeal,

---

[5]   Jones raises this argument as to all of the postpetition
payments to her or for her benefit.   Only as to the payroll
payments and deductions is there evidence that, in exchange, she
performed work that may have benefitted the estate.   In any
event, her argument would fail with respect to the other payments
for the same reasons it fails with respect to payroll transfers.

the district court upheld the bankruptcy court's ruling, holding
that the bankruptcy court was empowered to act as it did "either
explicitly under 11 U.S.C. § 550(d), or as a permissible exercise
of equitable power under 11 U.S.C. § 105(a)." *Id.* at 269.

Jones argues:

> Here, the Defendant has similarly already returned the
> alleged transfers that she received.  She returned the
> transfers in the form of post-petition services she
> performed for the Debtor.  Similar to the situation in
> *Cybridge*, the Debtor concealed the bankruptcy filing from
> the Defendant.  Without knowledge of the bankruptcy
> filing and its significance, the Defendant continued to
> work for the Debtor for almost 6 months after the order
> for relief was entered in March, 2008.  While it is true
> that she received payments from the Debtor, the payments
> she received were in exchange for her labor on behalf of
> the Debtor.  To allow the estate to accept the benefit of
> her labor (and presumably collect from those who
> contracted with the Debtor for her work) and then require
> her to return her wages is a windfall to the estate that
> is not permitted by Section 550(d).

However, in this case, "the estate did not transfer cash in
exchange for cash," *Cybridge*, 312 B.R. at 273, thus
distinguishing this case from *Cybridge*.  In short, there has
never been a satisfaction of the amounts the trustee is entitled
to recover under § 550(a), and § 105(a) cannot be utilized to
deprive the trustee of his statutory rights under § 550(a).

B.

In *Cybridge*, Presidential had already returned to the
debtor, as a debtor in possession exercising the powers of a
trustee and *thus representing the estate*, funds equal to the

13

funds transferred to Presidential, such that the property
transferred had already been recovered.  Presidential's advances
to Cybridge were viewed as a return of fungible dollars: for
every dollar paid to Presidential, a dollar or more was returned
to Cybridge, which was the equivalent of returning a tangible
asset that had been transferred without authorization.  *Id*. at
266.  The bankruptcy court thus ruled that § 550(a) was
inapplicable, and did so without the need to resort to § 550(d).
Here, in contrast, Jones has not returned any funds to White, the
trustee and representative of the estate, such that White has
not, in the language of § 550(a), already "recover[ed], for the
benefit of the estate, the property transferred."  Accordingly,
under § 550(a) he is entitled to recover from Jones "the value of
such property," meaning that he is entitled to a monetary
judgment against her.

On appeal in *Cybridge*, the district court affirmed the
bankruptcy court by treating the defendant as protected by the
single satisfaction provision of § 550(d) upon Presidential
showing that it had already paid to Cybridge, as a debtor in
possession, amounts exceeding the amounts it received from
Cybridge.  Again, however, Jones has not returned any funds to
White, the trustee, and thus there has been no "satisfaction" of
her monetary obligation to the estate via her making a payment to

14

the estate.   There has been no cash received by White from Jones.

Here, where the alleged benefit to the estate was the fruits of work Jones performed, the proper procedure for Jones's asserting a claim for having conferred a benefit on the estate is not to raise the claim as a defense to the trustee's § 550(a) claim.   Jones, at best, can assert an administrative claim against the estate under 11 U.S.C. § 503(b)(1)(A) asserting that the claim is one of "the actual, necessary costs and expenses of preserving the estate".   *See Sapir v. C.P.Q. Colorchrome Corp. (In re Photo Promotion Assoc.)*, 881 F.2d 6, 10 (2d Cir. 1989); *Musso v. Brooklyn Navy Yard Dev. Corp. (In re Westchester Tank Fabricators, Ltd.)*, 207 B.R. 391, 403 (Bankr. E.D.N.Y. 1997).[6] To pursue such an administrative claim, Jones must file in the main case a motion for allowance of an administrative claim.   *Id.* Under 11 U.S.C. § 1109(b), parties in interest monitoring the main case, such as the United States Trustee, Judy A. Robbins, would be allowed to participate in the adjudication of such a

---

[6]   I assume, without deciding, that Jones *would* be entitled to pursue an administrative claim against the estate, and that 11 U.S.C. § 502(d) would not apply to bar allowance of the claim prior to White's judgment under 11 U.S.C. § 550(a) being satisfied.   The courts are split on that issue.   *Compare In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 430-32 (2d Cir. 2009) (holding that § 502(d) does not apply to administrative expenses under § 503(b)) *with In re MicroAge, Inc.*, 291 B.R. 503, 508-14 (B.A.P. 9th Cir. 2002).   I similarly assume, without deciding, that 11 U.S.C. § 502(h) would not apply to make the claim a non-administrative prepetition claim without priority.

motion.  Once the claim is quantified, before being entitled to
receive payment on that claim, Jones must await a determination
of the amount of the pro rata distribution to which she would be
entitled (or a determination that the estate has sufficient
assets that there will not be an administrative insolvency if
Jones's claim were paid immediately).  *Id.*[7]

To elaborate, as in *Sapir*, 881 F.2d at 10, permitting Jones
to delay a recovery from her under § 550(a) while the parties
fight over whether there was a benefit to the estate would
obviously be inimical to the bankruptcy estate given the time
value of money.  Moreover, delaying the recovery under § 550(a)
and permitting a reduction of her obligation to the estate for
the amount of the benefit she conferred on the estate would
result in her obtaining satisfaction of her administrative claim
before other holders of administrative claims are paid, and could
lead to a result counter to 11 U.S.C. § 726(b), which requires
that upon the allowance of an administrative claim, such a claim
must be paid on a pro rata basis with other administrative claims
incurred in the chapter 7 case.  *Id.*  While there might *then* be a
right of setoff of her distributive share as an administrative

---

[7]  The extent of administrative claims in a chapter 7 case
is generally not known until shortly before a case closes, and
the record here does not permit the court to predict whether the
estate will be administratively insolvent (meaning that
administrative claims will not be paid in full).

16

claimant against White's § 550(a) judgment, it is premature for her to raise a right of setoff now.[8]

For these reasons, Jones's defense based on *Cybridge* is procedurally barred and does not preclude entry of summary judgment in White's favor.

C.

Moreover, even if Jones were entitled to raise the claim that she conferred a benefit on the estate as a defense to White's § 550(a) claim, Jones has not shown that her work conferred a benefit on the estate. Summary judgment in favor of White is appropriate on this alternative ground.

Once a trustee shows that a transfer is avoidable and that the trustee is entitled to recover under § 550(a), the burden of

---

[8] By way of analogy, *see also Hopkins v. Frazier (In re Tews)*, 502 B.R. 566, 571 (Bankr. D. Idaho 2013) ("Because neither party to the transaction had a claim against the other after the transaction was completed, there were no mutual claims to be extinguished by the 'netting out of debt.' Recoupment therefore does not apply to this typical postpetition transfer of estate property."); *Rochez Bros., Inc. v. Sears Ecological Applications Co. (In re Rochez Bros., Inc.)*, 326 B.R. 579, 587 (Bankr. W.D. Pa. 2005) (rejecting defense of equitable recoupment because the defendant must presently possess a claim against the plaintiff that can be used to reduce the defendant's liability to the plaintiff, and "a future § 502(h) claim is just that – a future claim, which is to say a claim that, as of the date when an avoidance action is being waged, does not presently exist"). *But see Rainsdon v. Davisco Foods Int'l, Inc. (In re Azevedo)*, 497 B.R. 590, 598-99 (Bankr. D. Idaho 2013) (upholding recoupment defense based on payments the defendant had given to the debtor in the past).

17

proving the existence of a defense thereto falls on the defendant. *See Goldman v. Capital City Mortg. Corp. (In re Nieves)*, 648 F.3d 232, 237 n.2 (4th Cir. 2011) (§ 550(b) provision that the trustee may not recover from certain transferees who took in good faith constitutes a defense to a § 550 proceeding, with the defendant bearing the burden to prove the defense). The same should apply to a defense of an equitable credit or the single satisfaction defense of 11 U.S.C. § 550(d).

As noted in *Cybridge*, 312 B.R. at 266-67, the bankruptcy court emphasized that "cash is fungible and allowing the credit merely recognizes that Presidential has already returned that which the Trustee seeks" and "Presidential's postpetition loans were made to the Debtor in Possession, a fiduciary with all the powers of a Trustee. [11 U.S.C.] § 1107(a)" who was authorized to operate the debtor's business under 11 U.S.C. § 1108. On appeal, the district court noted:

> We note, as did the Bankruptcy Court, that our holding would be different if Presidential's transfers had been made to a Chapter 7 debtor rather than a Chapter 11 debtor-in-possession. . . . Funds transferred to a Chapter 7 debtor might not be used for the benefit of the estate. Chapter 11 debtors-in-possession, on the other hand, have the same fiduciary duties to the estate as trustees.

*Id.* at 272 n.10. These observations counsel against my presuming, as urged by Jones, that her work conferred a benefit on the estate commensurate with her wages.

18

Here, Jones was not employed by Butler Innovative acting as a debtor in possession in a chapter 11 case exercising the powers of a trustee.  This case never was a case under chapter 11 of the Bankruptcy Code, and once an order for relief was entered, Butler Innovative had no authority to operate the business of the debtor.  Butler Innovative, through its president, who had a close personal relationship with Jones, may have authorized Jones to continue to perform work in the name of Butler Innovative, but White, the trustee, never authorized Jones to perform such work for the estate.

With respect to the issue of quantifying the alleged benefit she conferred on the estate, Jones has not even disclosed the amounts of the accounts receivable resulting from the project on which she worked, and, if she had, that would not suffice to quantify what benefit her work conferred on the estate.  The proceeds of those accounts receivable may have been dissipated by Butler Innovative, or Jones's work may have been unnecessary in order to realize such proceeds,[9] or the proceeds may have been attributable in part to other transfers made to generate the accounts receivable.

D.

*Cybridge* also relied on 11 U.S.C. § 105(a) as support for

---

[9]  Recall in this regard that Jones and Butler Innovative's president were in a personal relationship.

19

its decision.  However, it is well established that § 105(a) is
limited to furthering other provisions of the Bankruptcy Code and
may not be used in a manner contrary to specific provisions
elsewhere in the Bankruptcy Code.  *See Norwest Bank Worthington
v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169
(1988); *United States v. Sutton*, 786 F.2d 1305, 1308 (5th
Cir.1986) (§ 105(a) does not "authorize the bankruptcy courts to
create substantive rights that are otherwise unavailable under
applicable law, or constitute a roving commission to do
equity."); *New England Dairies, Inc. v. Dairy Mart Convenience
Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)*, 351
F.3d 86, 92 (2d Cir. 2003) ("The equitable power conferred on the
bankruptcy court by section 105(a) is the power to exercise
equity in carrying out the provisions of the Bankruptcy Code,
rather than to further the purposes of the Code generally, or
otherwise to do the right thing.").

Because White is entitled to a judgment under § 550(a), and
§ 550(d) is inapplicable, it would be inappropriate to utilize
§ 105(a) to give Jones a credit not authorized by any provision
of the Bankruptcy Code on the basis that Jones was unaware of the
bankruptcy case and acted in good faith in accepting the
payments.  As an "initial transferee" under § 550(a)(1), in
contrast to an "immediate . . .  transferee of such initial

20

transferee" under § 550(a)(2), Jones is not entitled to defend under § 550(b)(1) on the basis that she took "for value . . ., in good faith, and without knowledge of the voidability of the transfer avoided." Permitting her a credit based on her good faith, without knowledge of the bankruptcy case, would confer on her a § 550(b)(1) defense to which she is not entitled.

### E.

For reasons discussed in Lance E. Miller, *"But I Already Paid You!" Arguments Under the Single-Satisfaction Defense*, 2011 Norton Ann. Surv. of Bankr. Law 377, 392-96 (2011), *Cybridge* is open to possible criticism. For example, the legislative history to § 550(d) supports limiting that provision to barring a trustee from making recoveries from multiple transferees regarding the same transfer. *Id.* at 392-94. Under that view, because no judgment has been entered against any other entity regarding the transferred funds, the single satisfaction rule of § 550(d), barring multiple recoveries under § 550(a), does not apply. I need not decide whether, despite such issues, *Cybridge* was correctly decided on *its* facts: on the facts of *this* case, it would be inappropriate to treat Jones as entitled to an equitable credit wiping out White's entitlement to a recovery under § 550(a). The questionable validity of the *Cybridge* holding cautions against extending that holding to a factual setting that

21

is clearly distinguishable.

## VI

The three checks on Butler Innovative's account to Jones's landlord and the one check written directly to Jones occurred after the entry of the order for relief in this case and were not authorized by the court or the Bankruptcy Code.  These checks were in the total amount of $4,655.  Such transfers are avoidable under Section 549(a).  These transfers were for the benefit of Jones who rented the premises and may be recovered under Section 550 of the Code from the initial transferee or from the person for whose benefit the transfer was made.

## VII

The above transfers, made after the order for relief in the form of payroll payments of $11,666 and payments on account of Jones's rent of $4,655, total $16,321.  If the "S125MEECMP" and "PRETXEEDEN" deductions conferred a benefit on Jones, then the full $16,321 amount should be avoided and Jones ordered to return the payments to the estate.

## VIII

Pursuant to the foregoing, it is

ORDERED that within 21 days after entry of this order, White shall supplement his amended motion for summary judgment to address the "S125MEECMP" and "PRETXEEDEN" deductions and that if

the supplementation is not in the form of a stipulation that those deductions conferred a benefit on Jones, then within 14 days after White files his supplementation, Jones may file an opposition thereto.  It is further

ORDERED that if Jones has an argument that the court's analysis is flawed regarding the withheld taxes having conferred a benefit on Jones, then within 21 days after entry of this order, Jones may file a supplementation of her opposition, and White may file a reply thereto within 14 days of the filing of the same.

[Signed and dated above.]

Copies to: Recipients of e-notification of filing; and by hand-mailing to:

Betzaida Jones
297 S. 4th Street
Oxford, PA 19363